IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADOME L. HAILEMARIAM )<br>2550 Nicky Lane )<br>Alexandria, VA 22311 )<br>   )<br>   Plaintiff, )<br>v.   ) <br>   )<br>GW MEDICAL FACULTY ASSOCIATES, INC.  )<br>**Registered Agent:** )<br>Corporation Service Company )<br>1090 Vermont Ave. NW )<br>Washington DC 20005 )<br>   )<br>   Defendant. ) | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Adome L. Hailemariam, by and through undersigned counsel, hereby complains as follows against Defendant GW Medical Faculty Associates, Inc.

## INTRODUCTION

1. Plaintiff Adome Hailemariam ("Plaintiff" or "Ms. Hailemariam"), has initiated this action to redress violations by Defendant Medical Faculty Associates, Inc. ("Defendant" or "MFA") of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Pregnancy Discrimination Act of 1978 ("PDA"), which amended Title VII ("Title VII") of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, which prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"). Plaintiff was terminated from her employment for requesting medical leave for FMLA-qualifying conditions attendant to her pregnancy and disability. As a result, Plaintiff suffered damages as set forth herein.

1

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff has raised federal claims herein under the FMLA, PDA, and ADA.

3. This Court has personal jurisdiction over Defendant because Defendant operates in the District of Columbia.

4. Pursuant to 28 U.S.C. § 1391, the venue is properly laid in this district because Defendant conducts substantial, systematic, and continuous activity in this district and is subject to personal jurisdiction in this district and because all of the acts underlying this lawsuit occurred in this district. Venue lies separately pursuant to 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5. The foregoing paragraphs are incorporated herein as if set forth in full.

6. Ms. Hailemariam is an adult individual with an address as set forth above.

7. Defendant GW Medical Faculty Associates ("MFA") is the physician-led medical practice group of the physicians practicing at the George Washington University Hospital ("GWUH"), organized under the District of Columbia Non-Profit Corporation Act, D.C. Code § 29-401 *et seq*.

8. MFA conducts business and maintains an office in the District of Columbia.

9. Defendant employed Ms. Hailemariam until she was terminated on July 19, 2022.

10. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## PROCEDURAL HISTORY

11. More than thirty days prior to the institution of this lawsuit Plaintiff, filed a charge

with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and the ADA by Defendant. Less than 300 days after her termination, Plaintiff initiated the charge filing process with the EEOC. On March 24, 2023, Plaintiff filed her formal charge of discrimination with the EEOC, Charge No. 570-2022-02965. *See Exhibit 1*. On November 15, 2023, the EEOC issued a right-to-sue letter. *See Exhibit 2*. All other conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTS

12. Defendant has engaged in unlawful employment practices in violation of the PDA, Title VII, the FMLA, and the ADA.

13. Ms. Hailemariam was hired on June 14, 2021, to work as a Registered Nurse-Team Lead by and for MFA. *See Exhibit 3*.

14. Ms. Hailemariam became an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

15. Ms. Hailemariam had worked at least 1,250 hours for Defendant during the twelve (12) months prior to her being terminated for requesting to take FMLA-qualifying leave.

16. Defendant employed in excess of fifty (50) employees within seventy-five (75) miles of the location where Plaintiff worked during the time of her termination.

17. Defendant is an employer for purposes of the FMLA. 29 C.F.R. § 825.104.

18. Defendant is an employer for purposes of Title VII. 42 U.S.C. § 2000e.

19. Defendant is an employer for purposes of the ADA. 42 U.S. Code § 12101(5)(a)

20. In January 2022, Susan E. Sobel ("Manager Sobel") became Ms. Hailemariam's direct manager.

21. Beginning in 2017, Ms. Hailemariam suffered a series of miscarriages. On

November 8, 2019, Ms. Hailemariam's first child was born. Thereafter, Ms. Hailemariam suffered an additional miscarriage. On June 27, 2022, she took a home pregnancy test which revealed she was pregnant. Then on July 6, 2022, Ms. Hailemariam confirmed medically that she was pregnant again after a visit with her doctor. She was then referred to a high-risk pregnancy doctor and prescribed a regimen of care including Lovenox injections daily. The injections were administered by Ms. Hailemariam's partner into her stomach. The due date was supposed to be in March of 2023. During this period of time, Ms. Hailemariam was extremely worried about the prognosis of her pregnancy, having lost babies before. Then, on March 7, 2023, after a difficult pregnancy, Elishia was born, 6lbs, 14 ounces. He is a healthy baby and thriving.

22. On July 5, 2022, in an email to Manager Sobel, Ms. Hailemariam requested that she be permitted to begin working from home "due to medical conditions." In this email, Ms. Hailemariam also notified Manager Sobel that she would be applying for accommodation. *See Exhibit 4*. She also indicated that she would submit her application for leave simultaneously to Met Life.

23. Met Life is an insurance provider that provides coverage for short-term disability for MFA employees.

24. When an employee applies for and receives short-term disability benefits from Met Life, the duration of those benefits are simultaneously counted as leave available under the FMLA.

25. The medical criteria for applying for leave from Met Life are identical or substantially similar to the criteria permitting leave under the FMLA.

26. In fact, upon investigation and belief, MFA and Met Life's short-term disability plan benefits prohibit the "stacking" of FMLA leave and short-term disability leave pursuant to 29

4

C.F. R. § 825.702(d)(2).  Therefor leave pursuant to Met Life's police must be counted as FMLA leave.

27. Manager Sobel permitted Ms. Hailemariam to work from home on July 5, 2022. However, she denied Ms. Hailemariam's request to continue working from home as a result of her medical condition or to stay at home without pay pursuant to the FMLA. *See Exhibit 5*.

28. Instead, Manager Sobel required Ms. Hailemariam to come in on July 6, 2023, Ms. Hailemariam's scheduled day off, in retaliation to Ms. Hailemariam having worked from home on July 5, 2022, due to medical conditions, and for expressing her intention to seek and accommodation and FMLA-qualifying leave through Met Life.

29. On July 6, 2022, Ms. Hailemariam received a doctor's note that stated that Ms. Hailemariam was pregnant with a high-risk pregnancy and as a result should be permitted to work from home for the remainder of her pregnancy. *See* Exhibit 5.

30. On July 7, 2022, Ms. Hailemariam initiated her application for FMLA leave. She was told she had until July 22, 2022, to complete her paperwork, which included obtaining medical certifications from her doctors.

31. On July 7, 2022, Ms. Hailemariam notified her manager that she was not feeling well and requested permission to work from home. Manager Sobel did not reply.

32. On July 7, 2022, Ms. Hailemariam notified Nikki Baxter, a nurse who was covering for Manager Sobel, that she had applied for short-term disability and would be unable to come to work and thanked her for taking over her shift.

33. Ms. Hailemariam remained on medical leave while she was gathering the information needed for her FMLA medical certification.

34. MFA is estopped from questioning Ms. Hailemariam's FMLA eligibility because she was terminated prior to being required to submit a medical certification.

35. On July 18, 2022, Ms. Hailemariam's previously approved vacation time went into effect until July 29, 2022.

36. On July 19, 2022, while Ms. Hailemariam was awaiting approval for FMLA leave, Ms. Hailemariam was terminated due to "attendance and non-adherence to managers [sic] direction." *See Exhibit 6*.

37. No other reason other than her attendance during the period of time Ms. Hailemariam had requested medical leave due to complications attendant to her high-risk pregnancy were identified as the basis of her termination.

38. At the time of Ms. Hailemariam's termination she had FMLA, sick and personal leave available to her and had previously been approved to take leave through July 29, 2022, and was applying for FMLA-qualifying leave.

39. Defendant MFA's attendance policy requires a final warning after four unapproved absences. Termination is only warranted after a fifth unapproved absence. *See Exhibit 7*.

40. MFA ignored and intentionally violated its policies regarding absences of employees and terminated Ms. Hailemariam who had never previously received a warning for unapproved absences because in fact her absences were approved and/or she was entitled to take them under law or a promised by MFA.

41. Defendant was knowledgeable, or should have been knowledgeable, about the Defendant's affirmative obligations under the FMLA including the obligations not to interfere with Ms. Hailemariam's entitlements as set forth under 29 C.F.R. § 825.220.

42. Defendant knew Ms. Hailemariam had medical issues and desired an

accommodation and FMLA-qualifying as an accommodation.

43. By terminating Ms. Hailemariam for seeking approval of medical leave and taking FMLA-qualifying medical leave, Defendant failed to meet its statutory burden of complying with the FMLA in good faith when an employee uses leave for a protected reason and discriminated against her on the basis of her pregnancy and disability. *See generally* 29 C.F.R. § 825.

44. By terminating Ms. Hailemariam for seeking an accommodation to work during her high-risk pregnancy, MFA violated the ADA which affirmatively requires MFA to provide Ms. Hailemariam with an accommodation upon notice of a known impairment.

45. By terminating Ms. Hailemariam for seeking an accommodation to work during her high-risk pregnancy, MFA violated the PDA which affirmatively requires MFA to provide Ms. Hailemariam with an accommodation upon notice of a known impairment.

46. By terminating Ms. Hailemariam for seeking unpaid leave as administered through Met Life, MFA interfered with Ms. Hailemariam's entitlement to unpaid medical leave.

47. By terminating Ms. Hailemariam for seeking unpaid leave as administered through Met Life, MFA retaliated against Ms. Hailemariam for her attempts to take unpaid medical leave.

48. By terminating Ms. Hailemariam, she lost the income she otherwise would have earned had she not been terminated.

49. By terminating Ms. Hailemariam, she lost her health care coverage on July 31, 2023, and had to pay for health care out-of-pocket and make other arrangements.

50. By terminating Ms. Hailemariam, she lost her life insurance coverage on July 31, 2023. She was unable to afford replacement life insurance.

51. By terminating Ms. Hailemariam, she lost her eligibility to receive and/or apply for short-term and long-term disability insurance for which she was otherwise eligible.

52. Ms. Hailemariam had to rely on her savings, her retirement benefits and charities to provide for basic needs. She even had to resort to food banks to provide meals for herself and her children.

## COUNT I:
### Discrimination in Violation of Title VII and PDA
### (Gender and Pregnancy Discrimination)

53. Ms. Hailemariam re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

54. The PDA amends Title VII to forbid discrimination based on pregnancy when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, such as leave and health insurance, and any other term or condition of employment.

55. Defendant's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of pregnant women.

56. As a direct and proximate result of the Defendant's discrimination of Ms. Hailemariam, she has suffered damages, including emotional distress, damage to her reputation, anxiety, nightmares, insomnia, humiliation, and loss of enjoyment of life as well as termination of her employment.

## COUNT II:
### Violations of the Family and Medical Leave Act
### (Interference)

57. Ms. Hailemariam re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

58. Ms. Hailemariam requested temporary leave because of her pregnancy and disability.

59. Ms. Hailemariam was entitled to leave pursuant to the FMLA at the time she was terminated for requesting to take leave.

60. Ms. Hailemariam provided notice to Defendant that she needed medical leave related to her pregnancy and disability which necessitated her need for leave. *See Exhibit* 4. Ms. Hailemariam was terminated due to reasons associated with her pregnancy and disability which necessitated her need for leave, and specifically, her use of leave and seeking an accommodation to work from home or take FMLA-qualifying leave. *See Exhibit* 6.

61. As a direct and proximate result of the Defendant's interference with Ms. Hailemariam's right to leave she has lost income.

## COUNT III:
### Violations of the Family and Medical Leave Act
### (Retaliation)

62. Ms. Hailemariam re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

63. Ms. Hailemariam provided notice to Defendant that she had a medical condition and needed FMLA-qualifying leave for illness associated with her pregnancy. See Exhibit 4.

64. Defendant retaliated against Ms. Hailemariam by firing her for taking medical leave and for requesting to take FMLA leave.

65. Defendant was not permitted to retaliate against Plaintiff for exercising her rights under the FMLA.

66. Defendant violated Ms. Hailemariam's reinstatement rights by terminating her for pretextual reasons while Ms. Hailemariam's FMLA leave was pending approval.

67. As a direct and proximate result of the Defendant's retaliation of Ms. Hailemariam for seeking FMLA-qualifying leave, she has lost income.

## COUNT IV:
### Discrimination in Violation of ADA
### (Denial of Accommodation)

68. Ms. Hailemariam re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

69. Ms. Hailemariam's condition substantially limited her major life activities of working.

70. Ms. Hailemariam's condition qualified as a disability under the ADA.

71. The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability …." 42 U.S.C. § 12112(a). Title I of the ADA requires "reasonable accommodation" of employees' disabilities by their employers. Under the ADA, the term "discriminate" is defined as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

72. At no time did Defendant engage in the interactive process with Ms. Hailemariam regarding her medical condition nor provide her accommodation, such as allowing her to use available leave during her incapacity or to work from home, as she had done previously.

73. Instead, Defendant terminated Ms. Hailemariam for attempting to engage in the interactive process regarding her medical condition.

74. The termination of Ms. Hailemariam was motivated by her need for medical accommodation and leave.

75. The Defendant failed to provide Ms. Hailemariam with medical accommodation and failed to engage in an interactive process for reasonable accommodation with Ms. Hailemariam.

76. The defendant's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of individuals with disabilities.

77. As a direct and proximate result of Defendant's discrimination of Ms. Hailemariam, she has suffered damages, including emotional distress, damage to her reputation, anxiety, nightmares, insomnia, humiliation, and loss of enjoyment of life as well as termination of her employment.

**COUNT V:**
**Discrimination in Violation of ADA**
**(Retaliation)**

78. Ms. Hailemariam re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

79. Ms. Hailemariam's condition substantially limited her major life activities of working.

80. Ms. Hailemariam's condition qualified as a disability under the ADA.

81. The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability …." 42 U.S.C. § 12112(a). Title I of the ADA requires "reasonable accommodation" of employees' disabilities by their employers. Under the ADA, the term "discriminate" is defined as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation

would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

82. At no time did Defendant engage in the interactive process with Ms. Hailemariam regarding her medical condition.

83. Instead, Defendant terminated Ms. Hailemariam for attempting to engage in the interactive process regarding her medical condition.

84. The termination of Ms. Hailemariam was motivated by her need for medical accommodation and leave.

85. The Defendant failed to provide Ms. Hailemariam with medical accommodation and failed to engage in an interactive process for reasonable accommodation with Ms. Hailemariam.

86. The defendant's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of individuals with disabilities.

87. As a direct and proximate result of Defendant's discrimination of Ms. Hailemariam, she has suffered damages, including emotional distress, damage to her reputation, anxiety, nightmares, insomnia, humiliation, and loss of enjoyment of life as well as termination of her employment.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that this Court enter an Order providing that:

A. Defendant is prohibited from continuing to maintain its illegal policy, practice or custom of interfering with and retaliating against employees who exercise or who attempt to exercise their rights under the FMLA, PDA, and ADA and are to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

B.  Defendant compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C.  Plaintiff be awarded liquidated damages pursuant to the FMLA because Defendant's violations of the FMLA were without good faith.

D.  Award Plaintiff compensatory damages in an amount to be determined by the jury;

E.  Award punitive damages in favor of Plaintiff against Defendant in an amount to be determined by the jury;

F.  Award Plaintiff her reasonable costs and expenses incurred in this action, including attorneys' fees;

G.  Order equitable relief including but not limited to backpay and front pay;

H.  Enter such other and further relief as the Court may deem just and proper; and

I.  Plaintiff is permitted to have a trial by jury.

Respectfully Submitted  
Plaintiff  
By Counsel

Dated: November 15, 2023.

/s/ Matthew T. Sutter  
Matthew T. Sutter, Esq., D.C. Bar No. 477910  
Sutter & Terpak, PLLC  
7540A Little River Turnpike  
Annandale, VA 22003  
Telephone: 703-256-1800  
Facsimile: 703-991-6116  
Email: matt@sutterandterpak.com  
Counsel for Plaintiff